IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GLORIA WATERS and WILLIAM HALL,
on behalf of themselves and
others similarly situated,

        Plaintiffs,

v.                                    Civil Action No. 5:13CV151
                                                    (STAMP)
ELECTROLUX HOME PRODUCTS, INC.,

        Defendant.


            **MEMORANDUM OPINION AND ORDER**
            **DENYING MOTION TO REMAND AND**
    **SCHEDULING BRIEFING ON DEFENDANT'S MOTION TO DISMISS**

                I.  Procedural History

     This class action was initially filed in the Circuit Court of

Brooke County, West Virginia.  The plaintiffs, Gloria Waters and

William Hall, claim that the defendant, Electrolux Home Products,

Inc.'s, front-loading washing machines are defective because the

machines accumulate mold and mildew and are unfit for their

essential purpose.  The plaintiffs makes the following claims and

requests for relief in their complaint: (1) the defendant violated

the West Virginia Consumer Credit and Protection Act ("WVCCPA");

(2) the defendant breached an express warranty; (3) the defendant

breached an implied warranty of merchantability; (4) the defendant

was unjustly enriched; (5) declaratory relief, that the defendant

state that its washing machines have the defect complained of; (6)

injunctive relief, that the defendant cease and desist making the

defective washing machines; and (7) attorneys' fees and costs.

The defendant removed the case to this Court.  In lieu of an answer, the defendant filed a motion to dismiss.  Thereafter, the plaintiffs filed a motion to remand.  Upon request of the parties, this Court deferred ruling on the motion to dismiss until after an order was issued regarding the motion to remand, and, further, stayed discovery in this action.  The motion to remand is fully briefed and ripe for review.

## II.  Facts

In its notice of removal, the defendant makes the following arguments for meeting the $5,000,000.00 threshold required by the Class Action Fairness Act ("CAFA"):[1] (1) it would cost the defendant $50,000,000.00 to shut down the factory that makes the front-loading washers because washers are bought eighty percent of the time with a companion dryer, thus, ceasing to make the front-loading washers would also mean ceasing to make the accompanying dryers and make the factory unprofitable; (2) the defendant sold 4,200 front-loading washers to retailers and distributors in West Virginia between 2006 and 2013, which was an accumulated price of over $3,000,000.00; and 911 between 2000 and 2005, adding over $600,000.00, thus, this would go into the cost of damages because the plaintiffs have asked that the defendant replace all front-loading washers of the affected class (a total of $3,800,000.00); (3) even if only one out of five consumers purchased their washers

_____

[1]28 U.S.C. § 1332(d), et. seq. (2012).

in the surrounding 55-mile radius of West Virginia, that alone would put the amount in controversy over $5,000,000.00; and (4) attorneys' fees should be included in the calculation, at thirty-three percent of the damages, because the WVCCPA provides for attorneys' fees for any claim brought under it for "illegal, fraudulent, or unconscionable conduct."

The plaintiffs make four arguments why their motion to remand should be granted. First, the plaintiffs argue that the defendant has not shown that the plaintiffs' injunctive relief exceeds CAFA's statutory requirement. The plaintiffs argue that they are not asking that the defendant's factories be shut down or that they be forced to stop selling washers and dryers. Rather, the plaintiffs contend that they are asking that the defendant be required to stop selling front-load washers that contain a design defect known to the defendant in West Virginia. The plaintiffs thus argue that the defendant has not met its burden because it has not offered a valuation of the cost of those measures.

Second, the plaintiffs argue that the defendant has not shown that the plaintiffs' claims for monetary damages exceeds CAFA's statutory requirement. The plaintiffs contend that the affidavit offered by the defendant includes retailers and distributors who were sold the front-load washing machines, however, the plaintiffs' class does not include retailers and distributors but only those persons who own a washing machine for "personal, family, or

household purposes." Thus, the plaintiffs argue that the defendant's valuation of the monetary damages is speculative and should be disregarded. Further, the plaintiffs claim that the defendant has more consumer purchasing information than what has been provided to this Court and that the defendant has not provided that information because it does not support removal.

Third, the plaintiffs contend that the defendant has used sales from other states that are speculative because it has not shown how many of those sales actually went to West Virginia residents. Further, the plaintiffs argue that any sales before 2006 should not be used because they are beyond the applicable statute of limitations. Finally, the plaintiffs assert that the defendant's calculation of possible attorneys' fees, which the defendant estimated at one-third of the damages it calculated from units sold to distributors and retailers, is also erroneous because it is based on the erroneous damages calculation. Further, the plaintiffs contend that under the WVCCPA, attorneys' fees should be deemed costs and thus not be considered.

In its response, the defendant contends that the plaintiffs have not contested that the defendant would also have to discontinue the sale of certain dryers, but has only contested the defendant's argument that the factory would have to be shut down. Further, the defendant asserts that the plaintiffs are engaging in "post hoc" narrowing of their class definition to only stop sales

in West Virginia on "certain models" (which the defendant argues has not been defined and thus includes all front-loading washers), which should not be considered by this Court. Finally, the defendant notes that the factory in question would only have a twenty percent remaining output if all front-loading washers and their accompanying dryers were no longer made.

The defendant then asserts that it has shown that the sales to retailers and distributors, plus the sales in surrounding states, make the total of compensatory damages over $3,800,000.00. The defendant argues that it can use wholesale and retailer sales to show consumer product sale values. Further, the defendant contends that it has at least shown that a majority of the machines they used in their calculation of damages in the notice of removal were sold in West Virginia and that retailers/wholesalers only buy as many machines as they will sale.

Additionally, the defendant argues that the plaintiffs' class definition includes all sales of front-loading washers to West Virginia residents. Thus, the defendant argues that the plaintiffs cannot disclaim the defendant's use of sales to surrounding states because the named plaintiffs themselves bought their machine in Steubenville, Ohio, which bolsters the defendant's argument. Further, the defendant reiterated that less than five percent of the sales in the surrounding five states needed to be sold to West

Virginia residents in order to meet the $5,000,000.00 amount in controversy threshold.

Moreover, the defendant contends that the plaintiffs cannot assert in their complaint that the statute of limitations should be tolled because of concealment by the defendant but then argue that sales prior to 2006 should not be used in calculating the amount in controversy. Additionally, the defendant argues that product registration forms and consumer complaints, despite the plaintiffs' contention, do not provide an accurate estimate of the number of machines sold to West Virginia residents because only a small fraction of consumers actually complete or submit them. Finally, the defendant reiterated its argument that attorneys' fees should be used in calculating the amount in controversy.

The plaintiffs filed a reply, in which they argue that the plaintiffs have not changed their class definition and the defendant is still exaggerating the changes that would need to occur in order to fix the problem with the defective machines. In a footnote, the plaintiffs suggest that this could be as easy as adding a $20.00 component or spending an extra $20.00 per machine in order to ensure that machines are not defective. The plaintiff asserts that if adding $20.00 per machine, the defendant would have to sell 250,000 machines to West Virginia residents to meet the amount in controversy.

The plaintiffs also argue that the defendant has reiterated the same speculative and overly broad data about retail/wholesale sales compared to actual consumer purchases by persons within the plaintiffs' class. The plaintiffs further contend that the same argument the defendant uses for using out-of-state sales in its computation can be made for the contrasting position that in-state sales to out-of-state persons also occur. Thus, some of the sales made from a West Virginia retailer/wholesaler could have been made to an out-of-state buyer. The plaintiffs also distinguish the two Illinois cases cited by the defendant and argue that those cases contained far more reliable and extensive evidence than that provided by the defendant.

Finally, the plaintiffs assert that attorneys' fees are too speculative to calculate because the defendant is using its speculative compensatory damages determination and also has failed to (1) address the fact that the Aetna[2] factors would be applied and (2) the awarding of attorneys' fees is discretionary under the WVCCPA.

A supplemental memorandum was filed by the defendant to bring to the Court's attention two recent decisions that it believes support its opposition to the motion to remand: Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S.Ct. 547, 554 n.1 (2014)

---

[2]Aetna Cas. & Sur. Co. v. Pitrolo, 176 W. Va. 190, 196, 342 S.E.2d 156, 162 (1986).

and <u>Roa v. TS Staffing Servs., Inc.</u>, No. 2:14-CV-08424-ODW, 2015 WL 300413 (C.D. Cal. Jan. 22, 2015).  The defendant argues that based on <u>Dart Cherokee</u>, courts should not apply an anti-removal presumption to CAFA cases.  Thus, the defendant asserts that plaintiffs' reliance on such a presumption is incorrect. Accordingly, the defendant contends that it has offered enough evidence to survive a motion to remand.

Based on the analysis that follows, this Court finds that the plaintiffs' motion to remand should be denied.

### III.  <u>Applicable Law</u>

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter.  28 U.S.C. § 1441.  The Class Action Fairness Act ("CAFA") confers original jurisdiction on district courts over class actions in which (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," 28 U.S.C. § 1332(d)(2); (2) "any member of a class of plaintiffs is a citizen of a State different from any defendant," <u>id.</u> § 1332(d)(2)(A); and (3) "there are 100 or more plaintiff class members," <u>id.</u> § 1332(d)(5)(B).  <u>West Virginia ex rel. McGraw v. CVS Pharm., Inc.</u>, 646 F.3d 169, 174 (4th Cir. 2011). The claims of individual class members may be aggregated to meet the $5,000,000.00 amount in controversy.  28 U.S.C. § 1332(d)(6).

"No antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." <u>Dart Cherokee</u>, 135 S. Ct. at 554 (citation omitted). Thus, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." <u>Id.</u>

The burden of establishing the $5,000,000.00 jurisdictional threshold amount in controversy rests with the defendant as the plaintiffs have contested the defendant's allegations regarding removal. <u>See</u> <u>Strawn v. AT&T Mobility LLC</u>, 530 F.3d 293, 298 (4th Cir. 2008) (concluding that CAFA did not shift the burden of persuasion, which remains upon the party seeking removal). This Court has consistently applied the "preponderance of evidence" standard to determine whether a removing defendant has met its burden of proving the amount in controversy. The Supreme Court recently assumed, without deciding, that the section of the removal statute that contains the preponderance standard also applies to removals under CAFA. <u>See</u> <u>Dart Cherokee Basin Operating Co., LLC v. Owens</u>, 135 S.Ct. 547, 554 n.1 (2014) (assuming without deciding that Sections 1446(c)(2) and 1446(c)(2)(B) apply to cases removed under section 1332(d)(2), and that removal is proper if the amount

in controversy exceeds $5,000,000.00, the amount specified in section 1332(d)(2)).

The well-settled test in the United States Court of Appeals for the Fourth Circuit for calculating the amount in controversy is "'the pecuniary result to either party which [a] judgment would produce.'" Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002) (quoting Gov't Employees Ins. Co. v. Lally, F.2d 568, 569 (4th Cir. 1964)). Accordingly, in this case, the defendant must show by a preponderance of the evidence that the pecuniary interest, in the aggregate, of either party is greater than $5,000,000.00.

## IV. Discussion

In their motion to remand, the plaintiffs only contend that the $5,000,000.00 CAFA requirement is not met. The parties' arguments regarding the amount in controversy cover the three types of relief requested in the plaintiffs' complaint: injunctive, monetary, and attorneys' fees. This Court will review those three in turn.

### A. Injunctive Relief

The plaintiffs argue that their request for injunctive relief does not require the defendant to shut down its factories or to stop selling the washer and dryers in question. Rather, the plaintiffs assert that they are requesting that the defendant stop selling defective washers in West Virginia that would likely only require a $20.00 component to fix the machines. The plaintiffs

contend that the defendant has failed to show that such a fix is not possible or that with such a fix, the amount in controversy would be met.

On the other hand, the defendant asserts that the plaintiffs have made a broad claim in their complaint that the defendant must cease making the washing machines. The defendant argues that if required to stop making the washing machines, it would also have to cease making the companion dryers. Thus, the defendant contends that it would be forced to shut down a factory because only twenty percent of production output would be left.

1. Request for Relief: Cease and Desist

The plaintiffs' complaint seeks, in pertinent part, the following injunctive relief:

> "Grant appropriate relief, including, without limitations, an order that requires orders [*sic*] Electrolux to:
>
> > i. Cease and desist from the sale and manufacture of the defective Washing Machines;
> >
> > . . .
> >
> > iii. Establish an appropriate program, at Electrolux's sole expense, to inspect, repair, and replace the Washing Machines[.] . . ."

ECF No. 1-4 at 22, ¶ E. The plaintiffs clearly seek, as relief, that the defendant would cease and desist from manufacturing the defective washing machines. The plaintiffs do scale back their request by stating that the request applies to "the defective Washing Machines." However, the plaintiffs do not specify in their

request that the defendant be required to stop such actions only in West Virginia. Further, the third request, that a program for repair and replacement be implemented, tends to go against the plaintiffs' claim that the defendant may only be required to expend $20.00 per machine. The defendant would have to shut down operations until a proper remedy was found, which may only cost $20.00, and then make that change to all existing allegedly defective washing machines and any that had not been sold yet. Further, this cost would be expended on all future production. Accordingly, this Court finds that the injunctive relief may not be as broad as the defendant has suggested but certainly is not as narrow as the plaintiffs have suggested.

Given this finding, the Court will review the declaration of Shawn Hayes ("Hayes"), the Fabric Care Product Line Manager for the defendant, that was filed with the notice of removal ("notice of removal affidavit"). In the notice of removal affidavit, Hayes states that if the defendant had to shut down its front-load washing machine and dryer factory for one year, the fixed costs would be approximately $50,000,000.00.

This Court has just found that even with the plaintiffs' suggestion that a small fix may make the washing machines non-defective, the factory would likely still shut down for some time period to implement the changes suggested by the plaintiff and ensure that defective machines were not distributed. The

plaintiffs have not contested Hayes' estimation of how much it would cost to shut down the factory for one year. See Bartnikowski v. NVR, Inc., 307 F. App'x 730, 738 (4th Cir. 2009) (finding that where the plaintiffs fail to provide contradictory evidence of a figure provided by the defendant, the Court may accept such a figure as accurate). Given the estimation provided by Hayes, even if the factory were shut down for only one month, the fixed costs would be approximately $4,100,000.00. On top of this estimation, the cost of making a $20.00 change per machine, already distributed or otherwise, and the cost of implementing a program, would need to be added to the cost of the plaintiffs' requests for injunctive relief. Thus, this Court must now address whether or not the number of machines sold to West Virginians supplied by the defendant should be used for this Court's determination of whether the amount in controversy has been met when the additional cost of $20.00 per machine and implementation of a program is considered.

     2.   Request for Relief: Repair Program and Repairs

In the notice of removal affidavit, Hayes states that between 2006 and 2013, the defendant sold 4,200 front-load washing machines to retailers and distributors for sale and distribution in West Virginia. Further, Hayes asserts that between 2000 and 2005, Electrolux sold 911 front-load washing machines to retailers in West Virginia. The plaintiffs argue that this determination does not coincide with the plaintiffs' class definition provided in the

13

complaint and thus the figures are speculative.  The plaintiffs assert that the defendant should have used product registrations or complaint records instead of the numbers provided in the notice of removal affidavit.  Additionally, the plaintiffs argue that any data prior to 2006 should not be used to compute the amount in controversy as it is outside of the statute of limitations.

In response, the defendant provided another Hayes affidavit ("response affidavit") in which Hayes states that "retailers and distributors only purchase as many washing machines from Electrolux as they expect to sell to consumers."  ECF No. 18-1 at 4.  Further, Hayes states that a small number of consumers complete product registrations or complaint forms and thus, this record would be much more speculative than the records provided in the notice of removal affidavit.  Id. at 4-5.  This Court notes that it may consider such an affidavit as "[c]ourts have observed that the propriety of treating later-filed documents as amendments to a notice of removal depends on the content of the notice of removal and the record as a whole."  Carter v. Monsanto Co., 635 F. Supp. 2d 479, 487 (S.D. W. Va. 2009) (citing USX Corp. v. Adriatic Ins. Co., 345 F.3d 190, 206 n.12 (3d Cir. 2003); Buell v. Sears, Roebuck & Co., 321 F.2d 468, 471 (10th Cir. 1963)).  The response affidavit is used to clarify the notice of removal affidavit.

In the plaintiffs' complaint, the class is described as:  "All persons and entities in the State of West Virginia who own a

14

Washing Machine primarily for personal, family, or household purposes." ECF No. 1-4 at 9, ¶ 16. As stated previously, the plaintiffs argue that the defendant's data is speculative and should not be used. However, this Court finds that the defendant's data, as to its sales made in West Virginia, may be used as an estimate of how many machines would fall within the plaintiffs' purported class.

In Bartnikowski, the Fourth Circuit compared two CAFA cases, Strawn v. AT&T Mobility LLC, 530 F.3d 293 (4th Cir. 2008), and Miedema v. Maytag Corp., 450 F.3d 1322 (11th Cir. 2006), to find that removal was improper based on the defendant's speculative assumption that all persons in the plaintiffs' purported class had worked "five hours of overtime a week." Bartnikowski, 307 F. App'x at 738. The Fourth Circuit noted that the defendant's use in Strawn of the fact that 58,800 consumers in West Virginia were automatically enrolled in a roadside assistance program after the trial period was different than the records provided in Miedema. Id. (citing Strawn, 530 F.3d at 294-95. In Miedema, the defendant had provided a "guess extrapolated from the fact that [the defendant] had received a total of 2,493 product registrations from Florida consumers." Id. (citing Miedema, 450 F.3d at 1332).

In this case, the records provided by the defendant are more closely related to the evidence provided by the defendant in Strawn than the evidence provided in Bartnikowski and Miedema. Here, the

defendant has provided information regarding the number of retailers and distributors who sold front-load washing machines in West Virginia. Further, the defendant has couched such evidence in its averment that retailers and distributors only buy machines that they can then resell to consumers. Such a measure is not as speculative or a mere guess, which likely would have been the case had the defendant used the means the plaintiffs had suggested such as consumer complaint forms or product registrations (which were specifically cited in Bartnikowski by way of its analogy to the facts in Miedema). Thus, this Court finds that such a measurement can be used for washing machines within West Virginia.

This Court also finds that the plaintiffs' assertion regarding the applicability of the statute of limitations is without merit. The plaintiffs address the statute of limitations, and the tolling of the statute of limitations in their complaint. Id. at 17-18, ¶¶ 43-48. Specifically, the plaintiffs state in their complaint that: "The statute of limitations has been tolled by Electrolux's [actions] . . . . Electrolux is estopped from relying on any statute of limitations in defense of this action." Id. at ¶¶ 47-48. Thus, the plaintiffs may not now rely on an argument that they asserted was inapplicable in their complaint, without any specificity. Strawn, 530 F.3d at 298. As such, sales prior to 2006 may be used in computing the amount in controversy in this action.

This Court also notes that the defendant has provided numbers for sales in a radius of at least 55 miles of the West Virginia border. The plaintiffs argue that this too is speculative although the plaintiffs themselves purchased their washing machine from a retailer in Ohio. However, as this Court will find below, even without the possible out-of-state sales, the amount in controversy is met.

Given all of the above, if all washing machines that were sold to retailers and distributors within West Virginia (5,111) required at least a $20.00 fix, as the plaintiffs have suggested, the total amount would be $102,220.00. Further, the plaintiffs have requested a program for the implementation of such a fix. Thus, a fairly conservative view of the possible injunctive relief, given the plaintiffs' requests in the complaint, would be more than $4,202,220.00 (which does not include any costs of an implementation program).

B. <u>Monetary Damages</u>

Hayes states in his notice of removal affidavit that the total estimated retail price paid for machines sold in West Virginia was approximately $3,800,000.00. Given the amount of injunctive relief (over $4,000,000.00), and this Court's finding regarding the defendant's evidence of sales within West Virginia, the amount in controversy would certainly exceed the $5,000,000.00 threshold if monetary damages are taken into account. Thus, the defendant has

met its burden in proving, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000.00.

## C.  Attorneys' Fees

Although this Court has found that the $5,000,000.00 threshold has been met without the consideration of attorneys' fees, this Court will review the use of attorneys' fees, as an alternative finding.

The plaintiffs assert that the determination of possible attorneys' fees would be too speculative. However, given the plaintiffs' WVCCPA claim, and this Court's findings above, attorneys' fees are not speculative.

Although this determination would still require an analysis pursuant to the factors set out in Aetna,[3] other courts have found that the use of attorneys' fees may be appropriate when based on a statutory provision. Jones v. Capital One Bank (USA), N.A., Civil Action No. 6:09cv00994, 2009 WL 3335350 at *3 (S.D. W. Va. Oct. 15, 2009) ("[A]ttorney fees are included in calculating the amount in controversy because the West Virginia statute expressly provides

---

[3](1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

for them."). However, where the statute allows the discretionary award of attorneys' fees, attorneys' fees "are not necessarily included" in a determination of the amount in controversy. White v. JP Morgan Chase Bank, N.A., Civil Action No. 5:13cv52, 2013 WL 3187082 at *4 (N.D. W. Va. June 20, 2013).

The WVCCPA states the following regarding attorneys' fees:

> In any claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice, the court may award all or a portion of the costs of litigation, including reasonable attorney fees, court costs and fees, to the consumer. On a finding by the court that a claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice was brought in bad faith and for the purposes of harassment, the court may award to the defendant reasonable attorney fees.

W. Va. Code § 46A-5-104 (2012). The West Virginia Supreme Court has held that attorneys' fees under the WVCCPA should only be awarded where there has been "egregious conduct." Chevy Chase Bank v. McCamant, 512 S.E.2d 217, 227 (W. Va. 1998).

In their complaint, the plaintiffs describe the defendant's actions as "immoral, unethical, unscrupulous and substantially injurious to consumers." ECF No. 1-4 at 18, ¶ 53. The plaintiffs further describe the defendant as being "deceptive, misleading, and unfair." Id. at ¶ 58. Moreover, the plaintiffs describe the defendant's instructions to remedy the alleged defect of the washing machines as "startling" and unsafe, and suggest a danger to children. Id. at 14-15. Such descriptions are those which could

arise to "egregious conduct" and thus would likely lead to the assignment of attorneys' fees. Thus, the consideration of attorneys' fees would also be considered in meeting the amount in controversy threshold and could be used to bolster such a determination if this Court's findings as to other damages were found to be too broad.

As such, this Court finds that the defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.00, exclusive of interests and costs.

## V. <u>Conclusion</u>

Based on the analysis above, this Court finds that the plaintiffs' motion to remand is DENIED. Thus, this Court will consider the defendant's motion to dismiss after it has been fully briefed. The plaintiffs are thus DIRECTED to file a response, if necessary, to the defendant's motion to dismiss on or before **May 11, 2015**. The defendant is DIRECTED to file a reply, if necessary, on or before **May 26, 2015**. Further, discovery in this case will remain STAYED until this Court reaches a decision regarding the defendant's motion to dismiss.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:      April 27, 2015


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE