IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


GLORIA WATERS and WILLIAM HALL,
on behalf of themselves and
others similarly situated,

        Plaintiffs,

v.                                    Civil Action No. 5:13CV151
                                                        (STAMP)
ELECTROLUX HOME PRODUCTS, INC.,

        Defendant.


**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO STRIKE,
GRANTING DEFENDANT'S MOTION TO DISMISS AND
PERMITTING PLAINTIFFS TO FILE A SECOND AMENDED COMPLAINT**

This case is about a washing machine and the products liability suit it inspired. After years of use, the plaintiffs allege that they found their washer had developed a "biofilm" that ruined their clothing and emitted noxious fumes. They filed this class action against the manufacturer, Electrolux Home Products, Inc. ("Electrolux"), for various products liability claims under Ohio and West Virginia law. Electrolux filed a motion to dismiss under Rule 12(b)(6) and a motion to strike a portion of the class definition. For the following reasons, Electrolux's motion to strike is denied as premature, its motion to dismiss is granted, and the plaintiffs are permitted to file a second amended complaint solely regarding their negligent design and failure to warn claims.

I. <u>Background</u>

The plaintiffs live in Weirton, West Virginia. They purchased an Electrolux "high efficiency" washing machine at a Sears Department Store in Steubenville, Ohio in 2009. After years of use, the plaintiffs noticed a noxious odor coming from their washing machine. They contacted Electrolux in July 2013 and were told that they should leave the door of the machine open and run regular cycles with a product called "Affresh®." The plaintiffs tried these suggestions but saw no positive results.

Upon further investigation, the plaintiffs discovered that their washer had developed a coat of "biofilm," consisting of bacteria and mold, in the washer drum. This biofilm caused the odor and was transferred to clothing and other articles washed in the machine. The plaintiffs allege that Electrolux knew its washers allowed biofilm to develop, but continued to market them with a special "Deep Clean Sanitize" cycle that it claimed would kill "99.9% of bacteria with no carryover of bacteria between loads." ECF No. 46 at 19.

The plaintiffs filed this class action in West Virginia state court alleging consumer fraud, breach of warranties, and unjust enrichment on behalf of all persons in West Virginia who own a washing machine manufactured by Electrolux. The defendants removed the case to this Court under the Class Action Fairness Act, 28 U.S.C. §§ 1453, 1711–1715. Electrolux then moved to dismiss the

complaint under Federal Rule of Civil Procedure 12(b)(6), and the plaintiffs filed a motion to remand and alternatively for leave to amend the complaint. This Court denied the motion to remand and granted leave to amend the complaint. The plaintiffs filed their amended complaint defining a new class of persons in Ohio who purchased or own a washer manufactured by Electrolux.

The amended complaint alleges violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code §§ 46A-6-101 to 46A-6-110, violations of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. §§ 1345.01-1345.13, breach of express warranties, breach of the implied warranty of merchantability, tortious breach of warranties, negligent design and failure to warn, and unjust enrichment. Electrolux then renewed its motion to dismiss and moved to strike the Ohio Class.

## II.  Discussion

### A.  Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001).

Electrolux asks this Court to strike from the amended complaint the Ohio class definition, arguing that the plaintiffs do not represent the Ohio class because they are West Virginia residents. The plaintiffs define the following two classes in their amended complaint:

**West Virginia Class**

All persons an entities in the State of West Virginia who purchased or own a[n] [Electrolux washing machine] primarily for personal, family or household purposes.

**Ohio Class**

All persons and entities in the State of Ohio who purchased or own a[n] [Electrolux washing machine] primarily for personal, family, or household purposes.

ECF No. 38 at 6. Despite Electrolux's characterization of these definitions, they are ambiguous regarding class-members' residency. Moreover, Electrolux's problem with these definitions comes down to whether the named plaintiffs are representative of each class; a question to be decided on a motion to certify the classes. Therefore, this Court finds that Electrolux's motion to strike the Ohio class is premature.

B.   <u>Electrolux's Motion to Dismiss the Amended Complaint</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). This plausibility standard requires a plaintiff to articulate facts that, when

accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To determine whether the plaintiffs have satisfied this pleading standard, this Court must first determine which law applies to the named plaintiffs' claims.

Under Federal Rule of Civil Procedure 15(a)(2), a plaintiff may amend the complaint with the court's leave, and a "court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). A court has broad discretion concerning amendments to pleadings, but leave should be granted unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the [amending] party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426-27 (4th Cir. 2006) (internal quotation marks omitted).

1.   Choice of Law Analysis

While exercising diversity jurisdiction, this Court must apply West Virginia's choice of law principles. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). In doing so, this Court must first characterize the plaintiffs' claims.

The plaintiffs' claims for breach of express and implied warranties and for unjust enrichment clearly sound in contract, as they are based on an alleged contractual, or quasi-contractual,

relationship between the parties. The claims for negligent design and failure to warn and for tortious breach of warranty clearly sound in tort, as they seek compensation for allegedly wrongful conduct. The plaintiffs' claims for violations of Ohio and West Virginia's consumer fraud statutes are not as easy to define.

Both the Ohio and West Virginia statutes create private causes of action for consumers against sellers of goods who violate the statutes' prohibitions against unfair or deceptive trade practices. Ohio Rev. Stat. § 1345.09; W. Va. Code § 46A-6-106. A cause of action under each statute requires a plaintiff to show he or she relied on the unfair or deceptive practice in entering into the transaction, and that the practice proximately caused the plaintiff's damages. See Temple v. Fleetwood Enters., Inc., 133 F. App'x 254, 265 (6th Cir. 2005) ("[A] plaintiff must show 'a material misrepresentation, deceptive act or omission' that impacted his decision to purchase the item at issue." (quoting Mathias v. Am. Online, Inc., No. 79427, 2002 WL 377159, *5 (Ohio Ct. App. Feb. 28, 2002))); W. Va. Code §§ 46A-6-106(a), (b). Both statutes allow plaintiffs to recover actual damages; economic and non-economic. Ohio Rev. Stat. § 1345.09(A); W. Va. Code § 46A-6-106(a). While the OCSPA allows an individual plaintiff to rescind the transaction or recover actual damages, rescission is not permitted in a class action. Ohio Rev. Stat. § 1345.09(A), (B). Moreover, the OCSPA is "a remedial law which is designed to

compensate for traditional consumer remedies." <u>Einhorn v. Ford Motor Co.</u>, 548 N.E.2d 933, 935 (Ohio 1990). Although aspects of each statutory claim involve contractual issues, these statutes are intended to compensate consumers for damages caused by sellers' unfair or deceptive practices. Therefore, these claims sound in tort.

     a. <u>Contract Claims</u>

Because the plaintiffs' claims arise out of a purported contract for the sale of goods, the choice of law provisions in the Uniform Commercial Code as adopted by West Virginia apply. West Virginia Code § 46-1-301 provides that where the parties did not agree on what law should apply to their contract, West Virginia law applies so long as the contract "bears an appropriate relation to [West Virginia]." W. Va. Code § 46-1-301(b). Although West Virginia courts have not yet applied § 46-1-301 in that regard, those courts likely would apply West Virginia's common law choice of laws analysis to determine whether the contract "bears an appropriate relation" to West Virginia. <u>See</u> <u>In re Digitek Prods. Liab. Litig.</u>, MDL No. 2:08-md-01968, 2010 WL 2102330, *12 (S.D. W. Va. May 25, 2010) (concluding that the "appropriate relation" test requires the application of the Restatement (Second) of Conflict of Laws factors West Virginia Courts apply to contract claims); U.C.C. § 1-105 cmt. 3 ("Where a transaction has significant contacts with a state which has enacted the Act and also with other jurisdiction,

the question what relation is 'appropriate' is left to judicial decision.").

West Virginia considers the place of contracting, the place of performance, and which state has the most significant relationship to the contract under the Restatement (Second) of Conflict of Laws. See New v. Tac & C Energy, Inc., 355 S.E.2d 629, 631 (W. Va. 1987). The Restatement requires courts to consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the parties' domiciles. Restatement (Second) of Conflict of Laws § 188(2).

Here, the claims arise out of a consumer contract for the purchase of a washer and any terms attached to it. The place of contracting was Ohio because the plaintiffs purchased their machine there. The subject matter of the contract moved between Ohio and West Virginia, because the plaintiffs moved the machine from the Sears store in Ohio to their home in West Virginia. The plaintiffs reside in West Virginia, and Electrolux is incorporated in Delaware and with its principal place of business in North Carolina. Because the contract was formed in Ohio, that state has the most significant relationship to the contract. Therefore, Ohio law applies to the plaintiffs' breach of express and implied warranty claims and unjust enrichment claim.

b.   <u>Tort Claims</u>

     In West Virginia, the law of the place of harm applies in tort
actions.   <u>Perkins v. Doe</u>, 350 S.E.2d 711, 713 (W. Va. 1986).   The
plaintiffs claim actual damages to their personal property and
health and safety.  Because the plaintiffs reside in West Virginia,
they sustained those damages there.  Although the plaintiffs were
economically injured when they purchased the defective machine in
Ohio, the most significant damages occurred in West Virginia after
biofilm developed in their machine, ruined their clothing, and
emitted noxious fumes.  Therefore, West Virginia law applies to the
negligent design and failure to warn claims, the tortious breach of
warranty claim, and the consumer fraud claims.

     2.   <u>Breach of Express Warranty</u>

     The plaintiffs allege that Electrolux breached express
warranties contained in advertising and a repair-and-replace
warranty contained in the washer's "Use and Care Guide."  However,
the plaintiffs fail to allege sufficient facts showing that
Electrolux's advertising created express warranties.  They also
fail to allege that Electrolux breached the repair-and-replace
warranty within its one-year limitation.

     Under Ohio law, an ultimate consumer may maintain an action
directly against a manufacturer, without privity, for breach of an
express warranty where: (1) the manufacturer makes representations
regarding the quality and merit of its product; (2) the

representations are aimed directly at the ultimate consumer; (3) the consumer purchases the product in reliance on the manufacturer's representations; and (4) the consumer is harmed because of that reliance. <u>DiCenzo v. A-Best Prods. Co., Inc.</u>, 897 N.E.2d 132, 158 (Ohio 2008); <u>Rogers v. Toni Home Permanent Co.</u>, 147 N.E.2d 612, 613-14, 616 (Ohio 1958).

    a.  <u>Advertisements</u>

The plaintiffs allege that Electrolux represented in advertising that its machines "exclusive technology gets [consumers'] clothes cleaner than any other washer," and that its sanitizing cycle "will kill 99.9% of bacteria with no carryover of bacteria between loads." ECF No. 46 at 19. Electrolux argues that these statements did not create express warranties because they are mere puffery.

Under Ohio law, a manufacturer's advertisements for its products create an express warranty if the statement is either an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," or the statement constitutes a "description of the goods which is made part of the basis of the bargain." Ohio Rev. Code § 1302.26(A); <u>see also</u> <u>Jones v. Kellner</u>, 451 N.E.2d 548, 549 (Ohio Ct. App. 1982). But, "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." Ohio

Rev. Code § 1302.26(B); <u>see also</u> <u>Bobb Forest Products, Inc. v.</u>
<u>Morbark Indus., Inc.</u>, 783 N.E.2d 560, 574 (Ohio Ct. App. 2002)
("[P]uffing" or merely stating the seller's opinion does not amount
to an express warranty.").

Electrolux's statements that its washers "get[] [consumers']
clothes cleaner than any other washer" or "will kill 99.9% of
bacteria with no carryover of bacteria between loads" are
unverifiable expressions of opinion.  This Court finds that no
reasonable consumer would take those statements as an "affirmation
of fact or promise," or a description that would serve as the basis
of the bargain.  Ohio Rev. Code § 1302.26(A).  Those statements did
not create express warranties.

     b.   <u>Repair-and-Replace Warranty</u>

The plaintiffs allege that Electrolux breached its express
warranty contained in the machine's Use and Care Guide to repair or
replace defective parts.  Electrolux does not contest that the Use
and Care Guide contained a "one year limited warranty" obligating
Electrolux to "repair or replace any parts of [the machine] that
prove to be defective in materials or workmanship when such
[machine] is installed, used, and maintained in accordance with the
provided instructions."  ECF No. 4 Ex. 1 at 32.  Nor does
Electrolux deny that it refused to repair or replace any part of
the machine when the plaintiffs called in 2013 to complain about
the biofilm buildup.  Rather, Electrolux argues that the claim is

barred because the plaintiffs made their complaints after the one-year limitation period ran.  The plaintiffs argue that their claim is not barred by the one-year limitation because it is unconscionable.

"Unconscionability includes both an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  <u>Hayes v. Oakridge Home</u>, 908 N.E.2d 408, 412 (Ohio 2009) (internal quotation marks omitted).  "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable."  <u>Id.</u>

(1)  <u>Substantive Unconscionability</u>

In assessing substantive unconscionability, courts must consider whether the terms of the contract are "commercially reasonable."  <u>Id.</u> at 414.  While there are "[n]o bright-line set of factors for determining substantive unconscionability," courts have considered: (1) "the fairness of the terms"; (2) "the charge for the service rendered"; (3) "the standard in the industry"; and (4) "the ability to accurately predict the extent of future liability."  <u>Id.</u>  As for limited warranties, "[a] warranty disclaimer that leaves a party with a defective product and no avenue for recourse against the manufacturer is unconscionable.  However, a warranty in which the party disclaiming warranties or remedies assumes <u>some</u> form of responsibility for the performance or maintenance of the

12

product in issue is not unconscionable." _Westfield Ins. Co. v. Huls Am., Inc._, 714 N.E.2d 934, 949 (Ohio Ct. App. 1998) (emphasis added).

Electrolux's limited warranty obligated it to repair or replace its washer's defective parts within one year of purchase. Thus, Electrolux "assume[d] some form of responsibility for the performance or maintenance" of its machines. _Id._ Moreover, even if Electrolux knew before marketing its machines that they developed biofilm, there is no authority in Ohio to suggest that prior knowledge of a defect makes a limited warranty unconscionable, and other courts have recognized that prior knowledge alone does not make a limited warranty unconscionable. _See_ _Abraham v. Volkswagen of Am., Inc._, 795 F.2d 238, 250 (2d Cir. 1986) ("Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time . . . . A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless . . . limitations in warranty coverage."). Therefore, the plaintiffs have failed to plead sufficient facts for this Court to conclude that the one-year warranty limitation is substantively unconscionable.

### (2) Procedural Unconscionability

To determine whether a contract is procedurally unconscionable, courts must consider "the circumstances surrounding

the contracting parties' bargaining," including: (1) "the parties' age, education, intelligence, business acumen, and experience"; (2) "who drafted the contract"; (3) "whether alterations in the printed terms were possible"; (4) "whether there were alternative sources of supply for the goods in question"; (5) "belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract"; (6) knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract"; and (7) knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy[,] or inability to understand the language of the agreement." Hayes, 908 N.E.2d at 413 (internal quotation marks omitted). "All of the factors must be examined and weighed in their totality . . . [and] must be considered in tandem with the analysis on substantive unconscionability." Id. at 414.

The plaintiffs argue that the warranty terms contained in the Use and Care Guide constitute a contract of adhesion. Although Ohio law suggests that contracts of adhesion may be per se procedurally unconscionable, see Williams v. Aetna Fin. Co., 700 N.E.2d 859, 872-73 (Ohio 1998) (noting that a "finding of procedural unconscionability, or that the contract is one of adhesion, . . . requires more" than a disparity of bargaining power), this Court need not decide this issue. Even if the one-

14

year limited warranty is procedurally unconscionable, the plaintiffs have failed to show that it is substantively unconscionable. Therefore, the plaintiffs' breach of express warranty claims are barred because the alleged breach occurred outside the warranty period.

### 3. Breach of Implied Warranty of Merchantability

Claims for breach of an implied warranty are governed by Ohio Revised Code § 1302.27. "Unless excluded or modified . . . , a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ohio Rev. Code § 1302.27(A). So, to state a breach of implied warranty claim, the plaintiff must show: (1) that the defendant is a "merchant with respect to goods of that kind," id.; (2) that the parties are in privity of contract, Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Enters., Inc., __ N.E.3d __, 2015-Ohio-4884, ¶ 21 (Nov. 20, 2015); and (3) that the goods did not satisfy the criteria set out in Ohio Rev. Code § 1302.27(B).

The plaintiffs purchased their washer from a retailer, not directly from Electrolux. Thus, the parties are not in privity of contract. Nevertheless, the plaintiffs argue that an exception to the privity requirement applies here because they were an intended third-party beneficiary to a contract between Sears and Electrolux.

15

The privity requirement does not apply where either: (a) "the manufacturer is so involved in the sales transaction that the distributor merely becomes the agent of the manufacturer"; or (b) the consumer is "an intended third-party beneficiary to a contract." <u>Bobb Forest Prods., Inc. v. Morbark Indus. Inc.</u>, 783 N.E.2d 560, 576 (Ohio Ct. App. 2002) (internal quotation marks omitted). To be an intended third-party beneficiary, the promisee must intend for that third-party to benefit from the contract. <u>Hill v. Sonitrol of Sw. Ohio</u>, 521 N.E.2d 780, 784-85 (Ohio 1988). However, the "mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary." <u>Id.</u> at 785 (alteration in original) (internal quotation marks omitted).

The plaintiffs argue that they were intended beneficiaries of a warranty of merchantability conveyed from Electrolux to Sears because Electrolux intended that its washers would be sold to individual consumers. But the plaintiffs have not plead any facts regarding a contract between Electrolux and Sears, or whether that contract included or excluded the implied warranty of merchantability. Even if Electrolux conveyed a warranty of merchantability to Sears, at most the plaintiffs only incidentally benefitted from it. The performance of Electrolux's promise of merchantability to Sears did not satisfy a duty owed by Electrolux

16

to the plaintiffs because Electrolux owed no duty to the plaintiffs. Therefore, the plaintiffs were not intended third-party beneficiaries of any assumed warranty of merchantability between Electrolux and Sears.

Even if the plaintiffs were in privity with Electrolux, their claim is barred because they were not brought within the one-year period set out in the Use and Care Guide. The Guide provided that "**CLAIMS BASED ON IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY . . . ARE LIMITED TO ONE YEAR**." ECF No. 40 Ex. 1 at 32 (emphasis in original). Thus, just like their breach of express warranties claims, the plaintiffs' claim for breach of the implied warranty of merchantability are barred as outside the warranty period.

4. <u>Unjust Enrichment</u>

To state a claim for unjust enrichment under Ohio law, a plaintiff must prove: (1) that the plaintiff conferred a benefit on the defendant; (2) that the defendant had knowledge of the benefit; (3) that the defendant retained the benefit; and (4) that it would be unjust for the defendant to retain the benefit without paying the plaintiff. <u>Hambleton v. R.G. Barry Corp.</u>, 465 N.E.2d 1298, 1302 (Ohio 1984). "[A]n indirect purchaser cannot assert a common law claim for . . . unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser." <u>Johnson v. Microsoft Corp.</u>, 834 N.E.2d 791, 799

(Ohio 2005). Moreover, an indirect purchaser cannot establish that the manufacturer retained a benefit without showing that an "economic transaction occurred between" them. Id.

The plaintiffs allege that Electrolux received a tangible economic benefit in that the plaintiffs "paid a premium price for the[ir washer] that Electrolux represented as being suitable for ordinary use, and merchantable," and that Electrolux was able to "avoid[] costs associated with correcting the defects, making repairs, and recalling the defective [w]ashing [m]achines." ECF No. 38 at 26. However, even if Electrolux tangentially benefitted as the plaintiffs claim, this "benefit" does not constitute an economic transaction between the parties as required under Ohio law. Therefore, the plaintiffs cannot establish that they conferred a benefit on Electrolux that it unjustly retained.

5. Negligent Design and Failure to Warn

In West Virginia, a manufacturer is strictly liable for injuries caused by its products if "the involved product is defective in the sense that it is not reasonably safe for its intended use. The standard of reasonable safeness is determined . . . by what a reasonably prudent manufacturer's standards should have been at the time the product was made." Ilosky v. Michelin Tire Corp., 307 S.E.2d 603, 609 (W. Va. 1983). "[T]he initial inquiry . . . focuses on the nature of the defect and whether the defect was the proximate cause of the plaintiff's injury." Id.

18

(internal quotation marks omitted). "[A] defective product may fall into three broad, and not mutually exclusive, categories: design defectiveness; structural defectiveness; and use defectiveness arising out of the lack of, or the adequacy of, warnings, instructions, and labels. Id. (emphasis and internal quotation marks omitted).

The plaintiffs plead both design defectiveness and use defectiveness. To show design defectiveness, a plaintiff must show that "the physical condition of the product . . . renders it unsafe when the product is used in a reasonably intended manner." Morningstar v. Black & Decker Mfg. Co., 253 S.E.2d 666, 682 (W. Va. 1979). To show use defectiveness, the plaintiff must show that the defendant breached its duty to warn. "For a duty to warn to exist, the use of the product must be foreseeable to the manufacturer or seller." Ilosky, 307 S.E.2d at 609. "The question of what is an intended use of a product carries with it the concept of all those uses a reasonably prudent person might make of the product having in mind its characteristics, warnings and labels." Id. (emphasis and internal quotation marks omitted). "The determination of whether a defendant's efforts to warn of a product's dangers are adequate is a jury question." Id. at 611.

The plaintiffs allege that Electrolux's washers develop biofilm, made up of bacteria and mold, in the washer drum in the course of ordinary use, and that Electrolux knew of this defect.

19

Electrolux did not provide warnings to consumers that the machines "carried with them greater risks of bacteria, biofilm, and mold growth and health hazards tha[t] an ordinary consumer would not expect when using the [m]achines." ECF No. 38 at 25. Electrolux argues that the plaintiffs' claims fail because they have not sufficiently plead that the alleged defect and failure to warn makes the washers "unsafe" or that the named plaintiffs incurred a non-economic loss.

First, "[t]he term 'unsafe' imparts a standard that the product is to be tested by what the reasonably prudent manufacturer would accomplish in regard to the safety of the product, having in mind the general state of the art of the manufacturing process, including design, labels and warnings, as it relates to economic costs, at the time the product was made." Morningstar, 253 S.E.2d at 682-83. The plaintiffs allege that Electrolux knew its washers "carried with them greater risks of bacteria, biofilm, and mold growth and health hazards that an ordinary consumer would not expect when using the [m]achines." ECF No. 38 at 25. They further allege that "the development of biofilm . . . can lead to a host of health problems, including allergies and complications due to asthma." ECF No. 38 at 2. These allegations are sufficient to show that a reasonably prudent manufacturer would endeavor to design a washing machine to prevent the development of biofilm or to warn consumers about such risks. Therefore, the plaintiffs have

20

sufficiently plead that the alleged defects make the machines "unsafe."

Second, in a strict products liability suit, plaintiffs may recover damages for personal injury and for "damage to property other than the defective product." Star Furniture Co. v. Pulaski Furniture Co., 297 S.E.2d 854, 857 (W. Va. 1982). Plaintiffs may not recover "the difference between the value of the product received and its purchase price in the absence of a sudden calamitous event." Id. at 859.

Electrolux notes that the plaintiffs seek damages for "spend[ing] money to repair and/or replace the defective" washer, ECF No. 38 at 25, and argues that these constitute damages for diminution in value, not for personal injury or property damage. The plaintiffs generally plead that Electrolux's washers transfer biofilm to clothing and other articles washed in them, and that the machines "can lead to a host of health problems, including allergies and complications due to asthma." ECF No. 38 at 2. However, the present allegations are not specific to the named plaintiffs. This Court is unable to ascertain whether the named plaintiffs specifically suffered personal injury or property damaged due to their defective washer. Therefore, the plaintiffs fail to sufficiently plead damages proximately caused by Electrolux's conduct. Because the plaintiffs generally plead damages to consumers caused by the alleged defects, the plaintiffs

likely can plead damages specifically sustained by the named plaintiffs without prejudicing Electrolux. Thus, this Court will permit the plaintiffs to file a second amended complaint providing allegations of damages specifically incurred by the named plaintiffs due to Electrolux's alleged negligent design and failure to warn.

6.    Tortious Breach of Warranty

The plaintiffs allege a claim for tortious breach of warranty under Ohio law. A claim for tortious breach of warranty in Ohio is one for strict products liability. See Temple v. Wean United, Inc., 364 N.E.2d 267, 270 (1977) (providing that a plaintiff must prove that the product was defective when it was manufactured and sold by the defendant, that the defect existed when it left the defendant's control, and that the defect proximately caused the plaintiff's injury or loss). Because West Virginia law applies to the plaintiffs' tort-based claims, the plaintiffs may not state a second products liability claim under Ohio law.

7.    Consumer Fraud Claims

The WVCCPA provides a private right of action to consumers who suffer economic loss due to unfair or deceptive trade practices. W. Va. Code § 46A-6-106(a). A plaintiff must show: (1) that the defendant employed "[u]nfair methods of competition or deceptive acts or practices," id. § 46A-6-104; (2) that the plaintiffs suffered an ascertainable loss; and (3) that the plaintiff's loss

was proximately caused by the defendant's conduct. _Id._ § 46A-6-106(a), (b). The term "[u]nfair methods of competition and unfair or deceptive acts or practices" includes the "use or employment . . . of any . . . misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon [it] in connection with the sale or advertisement of any goods or services." _Id._ § 46A-6-102(7)(M). If the plaintiff "alleges that an affirmative misrepresentation is the basis for his or her claim then [the plaintiff] must prove that the deceptive act or practice caused him or her to enter into the transaction." _Id._ § 46A-6-106(b). Further, "no action . . . may be brought [under the WVCCPA] . . . until the [plaintiff] has informed the [defendant] . . . in writing and by certified mail, return receipt requested, of the alleged violation and provided the seller or lessor twenty days from the receipt of the notice of violation . . . to make a cure offer." _Id._ § 46A-6-106(c).

The plaintiffs argue that they "have generally pleaded notice" by alleging that Electrolux had the opportunity to make a cure offer "after learning of the [p]laintiffs' case." ECF No. 46 at 24. However, the WVCCPA requires a plaintiff to provide notice "in writing and by certified mail," not by filing a complaint. W. Va. Code § 46A-6-106(c). Because providing written notice is a prerequisite to filing a complaint, the plaintiffs' complaint cannot have served as the required notice. The plaintiffs failed

to plead that they notified Equitrans in writing of the alleged violations prior to filing their complaint.  Therefore, their claim under the WVCCPA is barred.

The plaintiffs also claim unfair or deceptive trade practices under the OCSPA.   Because West Virginia law applies to the plaintiffs' consumer fraud based claims, the plaintiffs may not state a second consumer fraud claim under Ohio law.

## III.  Conclusion

The plaintiffs failed to state a claim upon which relief can be granted.   However, this Court grants the plaintiffs the opportunity to file a second amended complaint solely regarding damages the named plaintiffs personally suffered due to the defendant's alleged negligence in designing their washer and its failure to warn about the potential development of biofilm. Accordingly, the defendant's motion to strike the Ohio class (ECF No. 41) is DENIED AS PREMATURE, the defendant's motion to dismiss (ECF No. 39) is GRANTED, but the plaintiffs may file **within fourteen days of the entry of this order** a second amended complaint to include damages specifically incurred by the named plaintiffs due to Electrolux's alleged negligent design and failure to warn. The plaintiffs will not be permitted to amend their complaint regarding any other claims at this time.  Further, the defendant's

prior motion to dismiss the original complaint (ECF No. 9) is DENIED AS MOOT.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this order to counsel of record herein.

DATED:     December 22, 2015

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE