IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GLORIA WATERS and WILLIAM HALL,
on behalf of themselves and
others similarly situated,

    Plaintiffs,

v.                                  Civil Action No. 5:13CV151
                                                          (STAMP)
ELECTROLUX HOME PRODUCTS, INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS AND
GRANTING ALTERNATIVE MOTION TO STRIKE CLASS CLAIMS**

    Previously, this Court granted the defendant's motion to dismiss the complaint, but permitted the plaintiffs to file a second amended complaint to add any allegations of damages as to the named plaintiffs regarding their strict products liability claims. The plaintiffs filed a second amended complaint, and the defendant filed a motion to dismiss the second amended complaint or, alternatively, to strike the plaintiffs' class allegations. For the following reasons, the defendant's motion to dismiss is granted in part and denied in part and its alternative motion to strike is granted.

### I. Background

    The named plaintiffs live in Weirton, West Virginia. They purchased an Electrolux "high efficiency" washing machine at a Sears Department Store in Steubenville, Ohio in 2009. After years

of use, the plaintiffs noticed a noxious odor coming from their washing machine. They contacted Electrolux in July 2013 and were told that they should leave the door of the machine open and run regular cycles with a product called "Affresh®." The named plaintiffs tried these suggestions but saw no positive results.

Upon further investigation, the named plaintiffs discovered that their washer had developed a coat of "biofilm," consisting of bacteria and mold, in the washer drum. This biofilm caused the odor and was transferred to clothing and other articles washed in the machine. The plaintiffs allege that Electrolux knew its washers allowed biofilm to develop, but continued to market them with a special "Deep Clean Sanitize" cycle that it claimed would kill "99.9% of bacteria with no carryover of bacteria between loads." ECF No. 55 at 12.

The plaintiffs originally filed this proposed class action in West Virginia state court alleging claims for consumer fraud, breach of warranties, and unjust enrichment on behalf of all persons in West Virginia who own a washing machine manufactured by Electrolux. The defendants removed the case to this Court under the Class Action Fairness Act, 28 U.S.C. §§ 1453, 1711–1715. The plaintiffs then filed an amended complaint defining a new class of persons in Ohio who purchased or own a washer manufactured by Electrolux, and alleging violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code §§ 46A-6-101 to

46A-6-110, violations of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. §§ 1345.01-1345.13, breach of express warranties, breach of the implied warranty of merchantability, tortious breach of warranties, strict products liability, and unjust enrichment. Electrolux then filed a motion to dismiss and to strike the Ohio Class. This Court denied the motion to strike and granted the motion to dismiss, but permitted the plaintiffs to file a second amended complaint to allege damages to the named plaintiffs as to their strict products liability claims. The plaintiffs filed their second amended complaint alleging that the named plaintiffs suffered the following damages: (1) damaged or ruined clothing washed in their washing machine; (2) future health risks caused by exposure to the biofilm and mold that developed in their machine; and (3) money spent on cleaning supplies to clean their washing machine. Electrolux then filed this motion to dismiss under Rule 12(b)(6) and alternatively to strike the class allegations.

## II. Discussion

Electrolux argues that the complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. Alternatively, Electrolux asks this Court to strike the class allegations. For the following reasons, this Court grants in part and denies in part Electrolux's motion to dismiss, and grants Electrolux's motion to strike the class allegations.

3

A.  Electrolux's Motion to Dismiss

This Court previously concluded that the plaintiffs had plausibly alleged their strict products liability claims except for damages as to the named plaintiffs. This Court permitted the plaintiffs to file a second amended complaint to allege damages suffered by the named plaintiffs. The plaintiffs' second amended complaint maintains the allegations from the prior amended complaint as to the strict products liability claims and provides additional allegations regarding damages to the named plaintiffs and proposed class members. Electrolux argues that the plaintiffs fail to plausibly allege damages as to the named plaintiffs. Specifically, Electrolux argues: (1) that alleged damage to the named plaintiffs' clothing is not specific enough to support a plausible claim because the plaintiffs do not identify specific articles of clothing that were damaged; (2) that alleged damages from exposure to mold and biofilm creating a risk of future health issues are not recoverable under West Virginia law; and (3) that alleged damages for money spent on products to clean their washing machine are not recoverable under West Virginia's economic loss doctrine.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility

standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

First, the plaintiffs' allegations that the named plaintiffs' clothing was damaged by their washing machine satisfy the plausibility standard. The plaintiffs allege that the named plaintiffs' "clothing has been damaged and ruined by mold, mildew, and biofilm deposits from the machine that cannot be removed from those articles of clothing." ECF No. 55 at 19. Electrolux argues that the plaintiffs specifically allege which particular articles of clothing were damaged, the extent of the damage, and when the damage occurred. While the plaintiffs do not identify specific articles of clothing, these allegations sufficiently identify a class of the named plaintiffs' identifiable personal property that was damaged as a result of using their allegedly defective washing machine. Electrolux argues that some courts have dismissed cases with similarly vague allegations of property damage. In re MI Windows & Doors, Inc. Prods. Liab. Litig., 908 F. Supp. 2d 720, 725-26 (D.S.C. 2012). However, the cited authority dealt with vague allegations of damages to unidentified "property." See MI Windows, 908 F. Supp. 2d at 724-25 (dealing with allegations that "defective windows have damaged other property within [the

5

plaintiffs'] homes" (emphasis added)).  Here, the plaintiffs have alleged damages to an identifiable set of the named plaintiffs' property: clothing washed in their defective washing machine.  This is sufficient, and the plaintiffs need not specifically identify any particular article of clothing to make their claim plausible. See Fed. R. Civ. P. 9 (noting special matters that require pleading with specificity).

Second, the plaintiffs' allegations of a potential health risk from biofilm and mold constitute a nebulous future harm that is not recoverable under West Virginia law.  Under West Virginia law, a plaintiff alleging negligence may generally recover only for an injury that has already occurred, including the future effects of a present injury.  Rhodes v. E.I. du Pont de Nemours & Co., 636 F.3d 88, 94-95 (4th Cir. 2011).  In their memorandum in response, the plaintiffs concede that the alleged increased risk of future health problems caused by exposure to mold and biofilm are insufficient to establish a physical injury under West Virginia law.  Accordingly, the plaintiffs fail to plausibly allege future damages to their health based on exposure to biofilm and mold in their washing machine.

Third, Electrolux argues that the plaintiffs' alleged damages for time and money spent on cleaning products to clean their washing machine are not recoverable in tort under West Virginia law.  Under West Virginia law, a claim for negligent design or

failure to warn is a strict products liability claim. <u>Ilosky v. Michelin Tire Corp.</u>, 307 S.E.2d 603, 609 (W. Va. 1983). In a strict products liability suit, a plaintiff may not recover "the difference between the value of the product received and its purchase price in the absence of a sudden calamitous event." <u>Star Furniture Co. v. Pulaski Furniture Co.</u>, 297 S.E.2d 854, 859 (W. Va. 1982). Such "direct economic loss" damages may be recovered only in a breach of contract or warranty claim. <u>Id.</u> at 858-59. Similarly, in a strict products liability suit, a plaintiff may never recover consequential economic losses resulting from the inability to use the defective product, including lost profits. <u>Id.</u> at 859, 857-58.

The plaintiffs seek damages for "the cleaning products they purchased–per Electrolux's instructions–which do not address the defect." ECF No. 55 at 19. These expenses were incurred in an attempt to rid their washing machine of the biofilm that developed therein; that is, to fix the alleged defect. Thus, these alleged expenses resulted from the plaintiffs' inability to use the allegedly defective washing machine, making these expenses consequential economic losses that are not recoverable in strict products liability under West Virginia law. Further, if these expenses may be considered part of the damage the defective washing machine caused to itself, the plaintiffs fail to allege a "sudden

7

calamitous event" causing that damage, and the expenses cannot be recovered as direct economic losses.

Yet, the plaintiffs argue that the economic loss rule does not apply because they have adequately plead damages to their property other than the washing machine. The plaintiffs rely on Aikens v. Debow, 541 S.E.2d 576 (W. Va. 2000), in which the West Virginia Supreme Court of Appeals held that a plaintiff cannot maintain a negligence claim based only on economic losses unless there is a contractual or special relationship between the plaintiff and defendant that makes such losses foreseeable. Id. at 589-90. Aikens implies that economic losses may be recovered if the plaintiff also alleges an injury to the plaintiff or his property, and other courts have allowed economic loss damages where the plaintiff alleges injuries to his person or property. However, the holding in Aikens does not apply to strict products liability claims. Star Furniture clearly provides a specific economic loss rule that applies only to strict liability claims, 297 S.E.2d at 859, while Aikens clearly provides a specific economic loss rule that applies only to negligence claims. 541 S.E.2d at 589-90. Because the plaintiffs assert only strict products liability claims, the Star Furniture formulation of the economic loss rule applies, and the Aikens formulation does not apply. Therefore, the plaintiffs' alleged damages for money spent on cleaning products are not recoverable under their strict products liability claims.

8

B.  <u>Electrolux's Motion to Strike the Class Allegations</u>

Electrolux argues that the second amended complaint's class allegations should be stricken because the plaintiffs' claims cannot be litigated on a classwide basis. Specifically, Electrolux argues that the second amended complaint cannot possibly satisfy Rule 23's requirements for certifying a class because each class member must prove individualized damages proximately caused by a defect in their individual washing machines. The plaintiffs argue that the motion to strike is premature, as the plaintiffs have not yet sought to certify the proposed classes.

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" <u>Waste Mgmt. Holdings, Inc. v. Gilmore</u>, 252 F.3d 316, 347 (4th Cir. 2001). However, a court may grant a motion to strike class allegations where the pleadings make clear that the proposed class cannot be certified and no amount of discovery would change that determination. <u>See</u> <u>Pilgrim v. Universal Health Card, LLC</u>, 660 F.3d 943, 949 (6th Cir. 2011); <u>see also</u> <u>John v. Nat'l Sec. Fire & Cas. Co.</u>, 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class,

a district court may dismiss the class allegation on the pleadings."); Fed. R. Civ. P. 23(d)(1)(D) ("[T]he court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."). Striking or dismissing class allegations before the plaintiffs file a motion for class certification is not premature where it is unnecessary for the court "to probe behind the pleadings before coming to rest on the certification question." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982); see also Pilgrim, 660 F.3d at 949 (concluding that a motion to strike class allegations filed before a motion for class certification was not premature where class certification was facially improper); Fed. R. Civ. P. 23(c)(1)(A) (requiring a court to make a class certification determination "[a]t an early practicable time"). Thus, Electrolux's motion to strike is not premature if this Court finds that the plaintiffs' class allegations are facially deficient.

To that end, Electrolux argues that the plaintiffs' class claims for strict products liability necessarily fail Rule 23's typicality, predominance, and superiority requirements because their strict products liability claims will require individualized showings of damages and proximate cause as to each class member.

"Rule 23(a) requires that the prospective class comply with four prerequisites: (1) numerosity; (2) commonality; (3)

10

typicality; and (4) adequacy of representation. In addition, the class action must fall within one of the three categories enumerated in Rule 23(b)." EQT Prod. Co. v. Adair, 764 F.3d 347, 357 (4th Cir. 2014) (citation and internal quotation marks omitted). The plaintiffs seek certification under Rule 23(b)(3), which is "[f]ramed for situations in which class-action treatment is not as clearly called for . . . [but] may nevertheless be convenient and desirable." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (internal quotation marks omitted). "[C]ertification under Rule 23(b)(3) is appropriate when all of the prerequisites of Rule 23(a) are satisfied and two other requirements are met. Specifically, (1) common questions of law or fact must predominate over any questions affecting only individual class members; and (2) proceeding as a class must be superior to other available methods of litigation." Adair, 764 F.3d at 357 (citation omitted). This Court finds that the second amended complaint facially fails to satisfy Rule 23's requirements for class certification and that no amount of discovery could alter this conclusion.

First, "[t]ypicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members.'" Leinhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001)

(quoting Falcon, 457 U.S. at 156). "[T]he fact that the named plaintiffs have the same general complaint against the defendant does not render their claims typical." Jones v. Allercare, Inc., 203 F.R.D. 290, 300 (N.D. Ohio 2001).

The named plaintiffs are not typical of the proposed classes "because the proposed class members' substantive claims depend on individual permutations . . . . Each plaintiff must individually prove that he or she experienced personal injuries and/or property damage which was proximately caused by the use of the defendant's products." Id. The issue of whether each class member suffered damages as a proximate cause of any defect in their washing machines will depend upon individual factors such as the nature of each class member's use of their washing machine and steps taken to prevent or get rid of biofilm. Thus, the named plaintiffs' proof of their claims will not necessarily prove any other class member's claim, and Rule 23(a)'s typicality requirement cannot be met. Further, this Court is concerned that the named plaintiffs are atypical because their consumer protection claims were previously dismissed as time-barred, preventing them from adequately representing class members as to their potential consumer protection claims. Additionally, the named plaintiffs reside in West Virginia and purchased their washing machine in Ohio, which likely would prevent them from representing the proposed Ohio class, and may cause typicality issues with the proposed West

12

Virginia class. The named plaintiffs' unique place of residency and place of purchase create complex choice of law issues that similarly complicate their ability to adequately represent straightforward classes of Ohio or West Virginia consumers.

Second, predominance requires "[t]he same analytic principles" governing Rule 23(a)'s commonality analysis, however the predominance requirement is "more demanding." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013). Commonality requires that the case present a common question of law or fact that is "of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Adair, 764 F.3d at 360 (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)). In addition to this, the predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). Thus, to satisfy the predominance requirement, the case must present common questions that go to "the controversy at the heart of the litigation." Adair, 764 F.3d at 357.

As discussed above, the plaintiffs' unique place of residency and place of purchase creates complex choice of law issues and typicality barriers to litigating all class members' claims in a single litigation. The proposed Ohio class would require the application of Ohio law, which this Court previously concluded does

13

not apply to the named plaintiffs' strict products liability claims. While West Virginia law would apply to both the named plaintiffs' and the proposed West Virginia class's claims, individual factual issues would predominate the litigation. Each class member must individually prove that their washing machine proximately caused damage to their person or particular property.

"[W]hile the need for individualized proof of damages does not necessarily preclude class certification so long as common issues continue to predominate over individual issues, it is impermissible to determine damages on a classwide basis in order to facilitate class treatment of a case when the governing law requires individualized proof of damages." Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 147 (4th Cir. 2001). Thus, "the need for individualized proof of damages may defeat predominance where proof of damages is essential to liability." Id. To state a strict products liability claim under West Virginia law, a plaintiff must prove that the product was defective and that the defect was the proximate cause of the plaintiff's injury. Ilosky v. Michelin Tire Corp., 307 S.E.2d 603, 609 (W. Va. 1983). Here, the plaintiffs and each member of the proposed class must show that the alleged defect in their washing machine proximately caused damage to their persons or property other than their machines. Thus, individualized proof of damages is an essential element to the plaintiffs' claims. While this does not necessarily defeat predominance, as discussed

14

more thoroughly below, this Court also finds that such an individualized determinations will result in overly complex proceedings such that class treatment is not superior to individualized litigation.

Third, superiority requires that "proceeding as a class '[be] superior to other available methods for fairly and efficiently adjudicating the controversy.'" Adair, 764 F.3d at 370-71 (quoting Fed. R. Civ. P. 23(b)(3)).  In evaluating superiority of the class action form, "[t]he court must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." Stillmock v. Weis Mkts., Inc., 385 F. App'x 267, 274 (4th Cir. 2010) (quoting 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1779 (3d ed. 2005)).  The Fourth Circuit has generally "embraced the view that the mass tort action for damages may be appropriate for class action, either partially or in whole." Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 424 (4th Cir. 2003) (internal quotation marks omitted). However, Rule 23(b)(3) requires the court to "ensure that class certification in such cases 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or

bringing about undesirable results.'" Id. (quoting Amchem, 521 U.S. at 615).

Class treatment would not be superior to individual litigation in this matter because, as discussed above, the issue of proximate cause will require individualized factual determinations that will obviate any benefit of class treatment. The plaintiffs argue that this Court may bifurcate the liability and damages issues, allowing class litigation as to liability and individualized proof of damages. However, as discussed above, the damages issue is not easily separable from the liability issue, as each class member must prove that their defective washing machine proximately caused damage to their person or property, which will require individualized factual determinations regarding their use of their machines. The required proof of plaintiff specific causation and damages makes the class action form untenable. Any attempt to remedy the typicality and predominance issues discussed above will likely result in needlessly convoluted class litigation.

Further, while burdensome damage calculations alone do not necessarily preclude class treatment, damages to each class members' person or property will not be uniform in this litigation, increasing the complexity and burden of calculating damages. This Court will not be able to apply a uniform formula for calculating damages. Each class member would need to present individualized evidence regarding particular damages they suffered. Simply put,

continuity of damages between class members cannot be guaranteed, making the only issue potentially amendable to class treatment the issue of whether Electrolux's washing machines were defective. However, the burden and complexity of parsing individual causality and damages claims, or of bifurcating proceedings, will outweigh any benefits of class treatment on the defectiveness issue. Thus, class treatment is not superior to individual litigation in this civil action. Accordingly, this Court finds that the second amended complaint facially fails to support class certification, and the class allegations must be stricken.

### III. Conclusion

The plaintiffs have plausibly stated claims for strict products liability under West Virginia law as limited by the above ruling. However, the plaintiffs may no longer maintain their class allegations. Accordingly, Electrolux's motion to dismiss or, alternatively, to strike the class allegations (ECF No. 58) is GRANTED IN PART AND DENIED IN PART. It is ORDERED that the plaintiffs' class allegations be STRICKEN from the second amended complaint, that the plaintiffs' allegations regarding the increased risk of future health problems caused by exposure to mold and biofilm be STRICKEN from the second amended complaint, and that the plaintiffs' allegations regarding damages in the form of time and money spent on cleaning products or repairs be STRICKEN from the second amended complaint. The plaintiffs are DIRECTED to file a

third amended complaint within fourteen days of being served with this memorandum opinion and order, and in accordance with the same. This Court will then enter a separate order scheduling a status and scheduling conference.

    IT IS SO ORDERED.

    The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

    DATED:    July 18, 2016

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE